## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

BATTLEFIELD MINISTRIES, INC., *a Minnesota not for profit corporation*; GAL PEREMISLOV; KAYLA BISHOP; and AILISHA TITUS,

Plaintiffs,

v.

CITY OF WACONIA, *a Minnesota Municipal Corporation*,

Defendant.

Case No. 24-cv-3753 (LMP/SGE)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Steven G. Polin, **Law Office of Steven G. Polin, Washington, D.C.**; and Seamus R. Mahoney, **Mahoney Law Office, Saint Paul, MN**, for Plaintiffs.

Joshua P. Devaney and Jessica E. Schwie, **Kennedy & Graven, Chartered, Minneapolis, MN**, for Defendant.

Plaintiffs sued Defendant City of Waconia (the "City") alleging that the City violated the Fair Housing Act and the Americans with Disabilities Act. The City now moves for summary judgment. For the following reasons, the City's motion is granted.

### FACTUAL BACKGROUND

In 2020, Plaintiff Gal Peremislov, who is self-employed in real estate management, purchased a six-bedroom house located at 415 West 1st Street in Waconia, Minnesota (the "Property"). ECF No. 37-1 at 2, 30. Plaintiff Battlefield Ministries, Inc. ("Battlefield"), operates sober homes to provide temporary housing for individuals who have completed residential treatment for alcohol and drug addiction. *Id.* at 30, 33. In the summer of 2023,

Battlefield began leasing the Property from Peremislov intending to use it as a sober home. *Id.* at 3, 30.

The Property is located in the City's R-2 zoning district. *See* ECF No. 34-1 at 577. Under the City's zoning ordinances, single-family dwellings in the R-2 zone are permitted without any special restrictions. *Id.* at 554–55. No more than four unrelated adults may reside in a single-family dwelling. *See id.* at 543 (defining "Family" as "an individual, or two (2) or more persons each related by blood, marriage, or adoption living together as a single housekeeping unit, or a group of not more than four (4) persons not so related maintaining a common household"). A residential dwelling in the R-2 zone may be leased by the property owner provided that the owner obtains a rental housing license. *See id.* at 536–38, 554–55. Relevant here, "[b]oarding of not more than two (2) roomers per residential unit" and "[r]esidential facilities licensed by the State of Minnesota serving six (6) or fewer persons" are permitted in the R-2 zone with special restrictions. *Id.* at 553–55.

There are no City ordinances specifically directed towards regulating the use of residential properties as sober homes. *See generally id.* at 540–75. Peremislov was unaware at the time he leased the Property to Battlefield whether Battlefield's intended use of the Property as a sober home was compliant with the City's ordinances. ECF No. 37-1 at 4. And Battlefield did not research the applicable City ordinances before leasing the Property. *Id.* at 30.

Battlefield began operating and accepting residents at the Property in August 2023. *Id.* Plaintiff Ailisha Titus resided at the Property from August 2023 through at least

2

September 2025, *id.* at 78–79, and Plaintiff Kayla Bishop resided at the Property between March 2024 and December 2024, *id.* at 15.  Battlefield generally maintained an occupancy of six residents at a time at the Property.  *See id.* at 30–31.

In or around September 2023, the City received a complaint regarding the Property. *See* ECF No. 34-1 at 576.  The City investigated the complaint and learned that Battlefield was using the Property as a six-resident sober home and that Battlefield was not licensed by the State of Minnesota to operate a group home.  *See id.* at 577; ECF No. 37-1 at 34. The City determined that Battlefield's use of the Property was not permitted under the City's zoning ordinances and, on November 16, 2023, ordered Battlefield to "discontinue the non-permitted use" by December 31, 2023.  ECF No. 34-1 at 577.

Around the same time, Battlefield proposed an amendment to the City's R-2 zoning ordinances to allow, with special restrictions, residential facilities that are not licensed by the State of Minnesota to have up to six residents.  *See id.* at 633.  The City's Planning Commission considered the request over the course of two public meetings, *see id.* at 603–22, 660–68, and on March 7, 2024, the Planning Commission voted to recommend that the City Council approve the proposal, *id.* at 675.  The City Council denied the proposed ordinance amendment, however, and adopted a resolution to that effect on April 1, 2024, finding that:

1. The amendment would not be appropriate as a permitted use with special restrictions as it may have a detrimental effect on neighboring residential single-family properties.

2. The current city code language reflects reasonable standards of development in a district which encompasses areas that were developed

3

    at densities that are generally higher than contemporary development standards.

3. The proposed ordinance amendment may cause unforeseen results for a number of properties within the R-2, Single-Family Residential zoning district.

*Id.* at 747. The City sent a letter to Battlefield on April 8, 2024, ordering Battlefield to "discontinue [its] non-permitted use" of the Property by April 23, 2024. *See id.* at 748.

On April 14, 2024, Battlefield submitted a request for a reasonable accommodation to allow up to six residents at the Property, citing its residents' drug and alcohol addictions as a federally protected disability under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). *See id.* at 752, 757. On April 25, 2024, the City sent Battlefield a letter identifying the criteria the City would use to determine whether "the requested accommodation is both reasonable and necessary to ameliorate the effect of a disability" and requesting additional information from Battlefield. *Id.* at 752–53 (emphasis omitted). In response, Battlefield noted that all its clients "have a diagnosis of substance use disorder." *Id.* at 757. Battlefield cited studies showing the positive benefits of group sober homes for individuals in recovery for drug and alcohol addiction, *id.* at 772–807, and expressed its belief that having "5–6 residents" in a "supportive drug-free environment in a quiet residential area" was "necessary to create a therapeutic environment of support," *id.* at 760. Battlefield also stated that it needed to "receive funding for at least 5 clients" for its sober house to "financially function efficiently." *Id.* at 758.

The City Council conducted additional proceedings over the subsequent months, including public hearings on June 3 and June 17, 2024. *Id.* at 754–55, 811–16, 825–27,

4

893–924. The City Council ultimately denied Battlefield's reasonable-accommodation request. *Id.* at 956–66. In sum, the City Council found that: (1) Battlefield provided "no specific information about the financial viability of [its] sober house," *id.* at 956; (2) Battlefield's statements and the materials it submitted did not "establish the minimum number of people necessary to create the 'therapeutic milieu'" of a sober home and did not "support a finding that more than three . . . people are necessary to alleviate the disabilities of [its] residents," *id.* at 957; (3) Battlefield's requested accommodation "creates an undue administrative burden on the City" based on Battlefield's "admitted history of disregarding zoning regulations" and the City Council's concern that "the availability of additional space at the Property to house additional residents beyond six . . . makes it likely that the City will be required to continually oversee [Battlefield's] compliance," *id.* at 958; and (4) Battlefield's requested accommodation "requires a fundamental alteration of the City's zoning policy," *id.* at 959. In reaching its decision, the City Council expressly stated that it "set[] aside" certain statements made or submitted by members of the community that were "emotionally charged and based primarily on perceptions about individuals recovering from substance abuse" because they were "mostly irrelevant" and "potentially discriminatory against a class of people protected by federal law." *Id.* at 958.

The City sent Battlefield a letter on July 3, 2024, notifying Battlefield of the City Council's decision. *Id.* at 967. The City ordered Battlefield to "discontinue [its] non-permitted use" of the Property by August 2, 2024. *See id.*

5

On September 12, 2024, the City filed a complaint in Minnesota district court against Battlefield and Peremislov (the "State Court Action").[1] ECF No. 37-1 at 246–54. The City alleged that Battlefield "failed or refused to comply with the City's ordinance" and that "at least five unrelated persons . . . continue to reside at the Property."[2] *Id.* at 250. Battlefield and Peremislov answered that complaint on September 27, 2024, *id.* at 255–57, and asserted as an affirmative defense that the City's refusal to grant Battlefield's requested accommodation "constitute[s] unlawful discrimination under the Fair Housing Act and the Americans with Disabilities Act," *id.* at 256. Plaintiffs filed the complaint here on September 27, 2024, ECF No. 2, the same day that Battlefield and Peremislov answered the City's complaint in the State Court Action, ECF No. 37-1 at 255–57.

The City moved for summary judgment in the State Court Action on July 2, 2025. *See* ECF No. 37-1 at 270–300. In response, Battlefield and Peremislov argued that their use of the Property as a sober home is protected by the FHA and the ADA and requested a

---

[1]     The City submitted multiple documents from the State Court Action, *City of Waconia v. Battlefield Ministries, Inc.*, No. 10-CV-24-944 (Minn. Dist. Ct. Oct. 8, 2025), as exhibits for purposes of its motion for summary judgment. *See* ECF No. 37-1 at 246–54 (the City's Complaint, Index #1); *id.* at 255–57 (Battlefield's and Peremislov's Answer, which they did not file (*see* ECF No. 40 at 2–3)); *id.* at 258–69 (the City's Amended Complaint, Index #19); *id.* at 270–300 (the City's Memorandum in Support of its Motion for Summary Judgment and Default Judgment, Index #64); *id.* at 301–03 (Battlefield's and Peremislov's Memorandum in Opposition to the City's Motion for Summary Judgment, Index #78); *id.* at 304–23 (the state court's Findings of Fact, Conclusions of Law and Order, Index #117); *id.* at 324–29 (Battlefield's and Peremislov's Motion for Leave To File a Motion for Reconsideration, Index #122); *id.* at 330–31 (Notice of Hearing on Battlefield's and Peremislov's Motion for Reconsideration, Index #150); ECF No. 52-1 (Order denying Battlefield's and Peremislov's Motion for Reconsideration, Index #152).

[2]     The City later amended its complaint to add claims and allegations regarding other violations of Minnesota's building and fire codes. *See generally* ECF No. 37-1 at 258–69.

stay of the State Court Action pending the outcome of this case. *See id.* at 301–03. The state court declined to stay the State Court Action and entered judgment granting the City's motion for summary judgment on October 8, 2025. *Id.* at 317–22.

The state court concluded that Battlefield and Peremislov "failed to establish that their use [of the Property] is protected" by the FHA or the ADA. *Id.* at 312. The state court found that the evidence Battlefield submitted in support of its reasonable-accommodation request "was insufficient to meet Battlefield's burden" of establishing that allowing Battlefield to house up to six residents at the Property was "necessary and not merely preferable." *Id.* at 314 (citing *Meraki Recovery Hous., LLC v. City of Coon Rapids*, No. 20-cv-203, 2021 WL 5567898 (D. Minn. Nov. 29, 2021)). The state court also found that "Battlefield's requested accommodation was unreasonable" both because it "would require a fundamental alteration of the City's zoning code" and because it "would cause an undue administrative burden" on the City. *Id.* at 314–15. Finally, the state court found "no evidence that the City discriminated against Battlefield or its residents." *Id.* at 315.

Battlefield and Peremislov moved for reconsideration of the state court's decision on November 4, 2025, *see id.* at 324–29, which the state court denied on March 11, 2026, ECF No. 52-1. Battlefield and Peremislov did not appeal the state court judgment or subsequent denial of their motion for reconsideration.

## PROCEDURAL BACKGROUND

Plaintiffs allege that the City enforced its zoning ordinances against Battlefield in a discriminatory manner and unlawfully denied Battlefield's reasonable-accommodation request in violation of the FHA and the ADA. *See* ECF No. 2 at 17–19.

7

The City moved for summary judgment here on March 2, 2026. ECF No. 35. After initially missing the deadline to respond, *see* D. Minn. L.R. 7.1(c)(2), Plaintiffs sought an extension of the deadline, ECF No. 41, which the City did not oppose, ECF No. 43. The Court granted the requested extension, ECF No. 44, and Plaintiffs again sought more time to respond, ECF No. 45. Because the City did not oppose Plaintiffs' request, the Court granted the requested extension, ECF No. 48, and Plaintiffs filed their response (albeit untimely) on April 21, 2026, ECF No. 49; *see* ECF No. 48 (setting response deadline for April 20, 2026). The City timely filed a reply, ECF No. 51, and the Court held a hearing on June 9, 2026, ECF No. 53.

## ANALYSIS

**I.      Legal Standard**

Summary judgment is appropriate where the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party asserting that a fact is, or is not, genuinely disputed must support that assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In other words, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). On a motion for summary

judgment, the Court "must view the record in the light most favorable to the nonmoving party" and "draw all reasonable inferences in the nonmoving party's favor." *Micone v. Levering Reg'l Health Care Ctr., L.L.C.*, 132 F.4th 1074, 1078 (8th Cir. 2025). But where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted).

## II.    Res Judicata

The City primarily argues that it is entitled to summary judgment because Plaintiffs' claims are barred by the doctrine of res judicata as a result of the final judgment entered in the State Court Action. *See* ECF No. 40 at 9–13. Because the Court need not reach the merits of Plaintiffs' FHA and ADA claims if they are barred by res judicata, the Court begins by addressing the City's res judicata argument. *See Emerald Pointe, LLC v. Taney County*, 78 F.4th 428, 433 (8th Cir. 2023) ("Addressing the merits of *res judicata* . . . helps avoid judicial waste.").

A "fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive." *Arizona v. California*, 460 U.S. 605, 619 (1983); *see Haberer v. Woodbury County*, 188 F.3d 957, 961 (8th Cir. 1999) (citing 28 U.S.C. § 1738) ("[J]udicial proceedings in one state will have the same full faith and credit in every court within the United States as they have by law in the courts of such state from which they are taken."). Consistent with this principle, the doctrine of res judicata— a "broad term often used to describe the more modern terms claim preclusion and issue preclusion," *In re Finstad*, 4 F.4th 693, 696 (8th Cir. 2021)—"bars relitigation of the same

9

claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction," *Wong v. Minn. Dep't of Hum. Servs.*, 820 F.3d 922, 933 (8th Cir. 2016) (citation omitted). Likewise, "collateral estoppel, or issue preclusion, precludes the relitigation of issues that are identical to issues previously litigated and that were necessary and essential to the prior judgment." *Minneapolis Cmty. Dev. Agency v. Buchanan*, 268 F.3d 562, 566 (8th Cir. 2001) (citing *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 650 (Minn. 1990)).

The "law of the forum that rendered the first judgment controls the res judicata analysis." *Scott v. City of Sherwood*, 94 F.4th 778, 780 (8th Cir. 2024) (citation omitted); *see Delgado v. Midland Credit Mgmt., Inc.*, 131 F.4th 896, 898 (8th Cir. 2025) (explaining that federal courts are bound by the law of the state where the first judgment was entered when deciding whether collateral estoppel applies). Under Minnesota law, a claim is precluded in subsequent litigation if: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 457 F.3d 766, 770 (8th Cir. 2006) (alteration in original) (quoting *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)); *see Care Inst., Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 448 (Minn. 2000) (identifying substantively the same factors for collateral estoppel).

10

## A.   Waiver

As an initial matter, Plaintiffs argue that the Court must disregard the City's res judicata argument because "it was not raised as an affirmative defense in [the City's] answer" and, as a result, Plaintiffs are "prejudiced" by the City raising it now. ECF No. 49 at 13–14. It is true that "[b]ecause res judicata is an affirmative defense, a party asserting res judicata must generally do so in the answer." *Emerald Pointe*, 78 F.4th at 432 (emphasis omitted) (citing Fed. R. Civ. P. 8(c)). But the Eighth Circuit has held that if an affirmative defense is raised "in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." *Id.* (quoting *Crutcher v. MultiPlan, Inc.*, 22 F.4th 756, 766 (8th Cir. 2022)).

Such is the case here. For starters, the City did, in fact, raise "estoppel" as an affirmative defense in its answer. *See* ECF No. 14 at 9. But more to the point, the City could not have known of the availability of a res judicata defense when it filed its answer on November 15, 2024, ECF No. 14, because judgment was not entered in the State Court Action until October 8, 2025, nearly one year later, ECF No. 37-1 at 322.

That aside, Plaintiffs can hardly claim "unfair surprise." Battlefield and Peremislov, as parties to the State Court Action, were also aware that final judgment had been entered in that case, and the state court expressly stated that Plaintiffs' claims here likely "would be completely resolved" by the state court's ruling. *Id.* at 320. Moreover, the fact that Battlefield and Peremislov sought a stay of the State Court Action because the outcome of this case would "directly impact" the issues in the State Court Action demonstrates their

11

understanding that a judgment in one case could have preclusive effect in the other.[3] *See* ECF No. 37-1 at 302; *see also id.* at 323 (granting summary judgment for the City in the State Court Action and explaining that this federal case "would be completely resolved by [the state court's] determination under principles of *res judicata*"). And here, the City raised res judicata in its opening brief in support of its motion for summary judgment. ECF No. 40 at 9–13. To the extent Plaintiffs were prejudiced by the City raising res judicata, that prejudice was substantially mitigated given Plaintiffs' opportunity to respond to the City's argument on the merits, both in their briefing and at the hearing on the City's motion for summary judgment. *Cf. Sias v. Herzog*, No. 04-cv-3832 (JNE/JSM), 2006 WL 2418950, at *4 n.3 (D. Minn. Aug. 21, 2006) (declining to consider arguments raised for the first time in a reply brief because the opposing party "had no opportunity to respond"); *accord Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003) ("It is well settled that [courts] do not consider arguments raised for the first time in a reply brief.").

Finally, addressing the City's res judicata argument aligns with the "purpose of res judicata": protecting "the defendant's interest in avoiding the burdens of twice defending a suit" and avoiding "unnecessary judicial waste." *Emerald Pointe*, 78 F.4th at 432–33 (emphasis omitted) (quoting *Arizona*, 530 U.S. at 412). As in *Emerald Pointe*, even if the City technically violated Rule 8(c) by not specifically pleading or amending its answer to include res judicata as an affirmative defense, the Court concludes that the City raising it

---

[3]   The Court notes that Battlefield's and Peremislov's counsel in the State Court Action is one of Plaintiffs' counsel in this case. *Compare* ECF No. 37-1 at 303, *with* ECF No. 2 at 21.

now at summary judgment has not resulted in "unfair surprise" to Plaintiffs. *Id.* at 432. The Court therefore will address the merits of res judicata in this case.

### B.    Merits

The City argues that res judicata bars Plaintiffs' FHA and ADA claims because they were adjudicated on the merits in the State Court Action, resulting in a final judgment in the City's favor, and that Bishop and Titus were in privity with Battlefield and Peremislov in the State Court Action. *See* ECF No. 40 at 9–13. Plaintiffs respond that res judicata does not apply to "any" of their claims.[4]  ECF No. 49 at 14. Considering the claims Plaintiffs raise in this case and the issues that were litigated in the State Court Action, the Court concludes that res judicata applies.

***First***, although the State Court Action was brought by the City to enforce its zoning ordinances, that case was based on the same factual circumstances alleged by Plaintiffs here: Battlefield's and Peremislov's alleged violations of the City's zoning ordinances, and the City's denial of Battlefield's reasonable-accommodation request to operate the Property as a six-person sober home. *Compare* ECF No. 37-1 at 247–50 (the City's original complaint in the State Court Action alleging facts regarding the City's zoning enforcement and denial of Battlefield's reasonable-accommodation request), *and* ECF No. 37-1 at 259–61 (same as to the City's amended complaint in the State Court Action), *with* ECF No. 2 ¶¶ 31–87 (Plaintiffs' complaint here alleging substantively the same facts). And Battlefield

---

[4]    Other than their waiver argument, Plaintiffs only offer argument that Bishop's and Titus's claims are not barred by res judicata, asserting that they were not parties to the State Court Action and were not in privity with Battlefield and Peremislov. *See* ECF No. 49 at 13–14. The Court nonetheless addresses res judicata as to all Plaintiffs and their claims.

and Peremislov alleged in the State Court Action, as Plaintiffs do here, that the City engaged in unlawful discrimination under the FHA and the ADA and that their use of the Property as a sober home is protected by those statutes. *Compare* ECF No. 37-1 at 256 ("The [City's] actions constitute unlawful discrimination under the Fair Housing Act and the Americans with Disabilities Act."), *with* ECF No. 2 at 17–19 (alleging that the City engaged in unlawful discrimination under the FHA and the ADA by enforcing its zoning ordinances and denying Battlefield's reasonable-accommodation request).

***Second***, the State Court Action involved mostly the same parties: the City, Battlefield, and Peremislov. *Compare* ECF No. 2 ¶¶ 3–6, 10,[5] *with* ECF No. 37-1 at 246. And although, as Plaintiffs note, Bishop and Titus were not parties to the State Court Action, ECF No. 49 at 13, they were in privity with Battlefield and Peremislov under the circumstances presented here. "Privity," for purposes of res judicata, "expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011) (quoting *Margo-Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 200 N.W.2d 45, 47 (Minn. 1972)). The circumstances in which privity exists "cannot be precisely defined," and "determining whether parties are in privity requires a careful examination of the circumstances of each case." *Id.* Circumstances in which privity is found include when a person's "interests are represented by a party to the action," *Margo-*

---

[5]     Plaintiffs' complaint does not contain a paragraph 4 or 5.

14

*Kraft*, 200 N.W.2d at 47–48, or when a person is otherwise "so identified in interest with another that he represents the same legal right," *McMenomy v. Ryden*, 148 N.W.2d 804, 807 (Minn. 1967) (citation omitted).

Here, Battlefield and Peremislov asserted in the State Court Action that Battlefield's use of the Property as a six-person sober home was protected by the FHA and the ADA. *See* ECF No. 37-1 at 256. That issue was litigated in the State Court Action, *see id.* at 287–96, 302, and adjudicated on the merits by the state court, *see id.* at 312–16. Plaintiffs argue that Bishop's and Titus's claims before this Court "were not processed, reviewed, nor litigated in state court." ECF No. 49 at 13. But Bishop and Titus raise no claims of their own in this action that are distinct, either factually or substantively, from Battlefield's and Peremislov's claims in the State Court Action.[6] *Compare* ECF No. 2 at 17–19 (alleging that the City engaged in unlawful discrimination under the FHA and the ADA by enforcing its zoning ordinances and denying Battlefield's reasonable-accommodation request), *with* ECF No. 37-1 at 256 ("The [City's] actions constitute unlawful discrimination under the Fair Housing Act and the Americans with Disabilities Act."), *and* ECF No. 37-1 at 302 (arguing that Battlefield's and Peremislov's "request for accommodation under the FHA and ADA was supported by documentation of disability-related needs"). Perhaps most conclusive is that the only relief Plaintiffs here (including Bishop and Titus) specifically request is declaratory and injunctive relief that would establish Battlefield's right to use the

---

[6]   Indeed, other than in the two paragraphs of Plaintiffs' complaint here establishing who Bishop and Titus are, *see* ECF No. 2 ¶¶ 7–8, neither Bishop nor Titus are otherwise referred to in the complaint individually or as separate and distinct from "Plaintiffs" collectively, nor are there any allegations specific to Bishop or Titus, *see generally id.*

15

Property as a six-person sober home and prevent the City from interfering with that purported right through enforcement of its zoning ordinances. *See* ECF No. 2 at 19–21. That is, in effect, the same relief that Battlefield and Peremislov sought in the State Court Action because for Battlefield and Peremislov to prevail there, the state court would have had to determine that their use of the Property was protected by the FHA or that the City's enforcement activity was otherwise unlawful, which would have precluded the City from attempting any future zoning enforcement action. *See* ECF No. 37-1 at 256–57. In other words, "[i]dentity of interest could not be clearer or closer" because Battlefield and Peremislov "represented precisely the same, single interest" in the State Court Action that all Plaintiffs (including Bishop and Titus) assert here: Battlefield's interest in operating a six-person sober home at the Property despite any noncompliance with the City's zoning ordinances. *Hart Steel Co. v. R.R. Supply Co.*, 244 U.S. 294, 298 (1917). Under these circumstances, the Court concludes that Bishop and Titus were in privity with Battlefield and Peremislov in the State Court Action. *See Margo-Kraft*, 200 N.W.2d at 47–48; *McMenomy*, 148 N.W.2d at 807.

**Third**, the state court thoroughly analyzed the merits of the City's claims in the State Court Action, including whether the FHA or the ADA precluded a finding of liability as to Battlefield's and Peremislov's violations of the City's zoning ordinances. ECF No. 37-1 at 312–16. The state court determined that Battlefield and Peremislov "failed to establish that their use [of the Property] is protected" by the FHA or the ADA, *id.*, and entered judgment in the City's favor on October 8, 2025, *id.* at 322. The state court's determination that Battlefield's and Peremislov's violations of the City's zoning ordinances were not

16

protected by the FHA or the ADA was "necessary and essential" to the judgment. *See Buchanan*, 268 F.3d at 566. Importantly, Battlefield and Peremislov did not appeal the judgment entered in the State Court Action, and the time for Battlefield and Peremislov to appeal that judgment has elapsed. *See* Minn. R. App. P. 104.01, subd. 1 ("[A]n appeal may be taken from a judgment within 60 days after its entry."). As a result, the judgment entered in the State Court Action is final. *See Devescovi v. Ventura*, 195 F. Supp. 2d 1146, 1149 (D. Minn. 2002) (citing *Indianhead Truck Line v. Hvidsten Transp. Inc.*, 128 N.W.2d 334, 341 (Minn. 1964)) ("An order or judgment becomes final and binding after the appellate process is terminated or the time for appeal has expired.").

*Fourth*, and finally, Battlefield and Peremislov, as parties to the State Court Action and in privity with Bishop and Titus, had "a full and fair opportunity to litigate" their FHA and ADA claims. *St. Paul Fire & Marine*, 457 F.3d at 770 (citation omitted). Battlefield and Peremislov asserted at the outset of the State Court Action that their use of the Property was protected by the FHA and the ADA,[7] *see* ECF No. 37-1 at 256, and offered argument

---

[7] To the extent Plaintiffs assert that their FHA and ADA claims in this action were not adjudicated as "claims" in the State Court Action but as affirmative defenses, that does not change the analysis. Plaintiffs' FHA and ADA claims almost certainly were compulsory counterclaims in the State Court Action. *See* Minn. R. Civ. P. 13.01 ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction that is the subject matter of the opposing party's claim."); *see also Thornes v. City of Waldorf*, No. 13-cv-546 (JRT/LIB), 2014 WL 4829136, at *7–10 (D. Minn. Sept. 29, 2014) (concluding plaintiff's claims were barred by res judicata because they were compulsory counterclaims under Minnesota law that were not raised in prior litigation between the parties involving the same factual circumstances). And although Plaintiffs argue that Bishop and Titus could not be parties to the City's zoning enforcement claims in the State Court Action, *see* ECF No. 49 at 13, they do not explain why Bishop and Titus—both of whom resided at the Property when the State Court Action began, *see* ECF No. 37-1 at 15, 79—did not seek to intervene in that

17

on that issue on summary judgment, *see id.* at 302.  Upon entry of judgment in the City's

favor, Battlefield and Peremislov moved the state court to reconsider its decision and re-

raised their FHA and ADA arguments, *see id.* at 324–28, which the state court again

rejected on reconsideration, *see* ECF No. 52-1.  And Battlefield and Peremislov evidently

chose not to appeal the state court's judgment, rendering it "final and binding." *Devescovi*,

195 F. Supp. 2d at 1149.

For these reasons, the Court concludes that Plaintiffs' FHA and ADA claims are

barred by res judicata.[8]  Accordingly, the City's motion for summary judgment is granted,

and this matter is dismissed.

## CONCLUSION

For these reasons, and on all the files, records, and proceedings in this matter, **IT IS**

**HEREBY ORDERED** that:

1.     The City's Motion for Summary Judgment (ECF No. 35) is **GRANTED**; and

2.     This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: July 20, 2026                              *s/Laura M. Provinzino*
                                                  Laura M. Provinzino
                                                  United States District Judge

---

case as parties with "interest[s] relating to the property . . . which [was] subject of the action," Minn. R. Civ. P. 24.01, or whose FHA and ADA claims "ha[d] a common question of law or fact" with the City's enforcement claims or Battlefield's and Peremislov's FHA and ADA affirmative defenses, Minn. R. Civ. P. 24.02.

[8]     As a result, the Court does not reach the City's remaining arguments on the merits of Plaintiffs' FHA and ADA claims.  *See* ECF No. 40 at 13–23.